### STATE v. HITCHCOCK.

No. 79-45351TT10.

County Court, Broward County.

Septemeber 21, 1979.

Andrew C. Washor, Assistant State Attorney, for the state.

Robert C. Rogers, Jr., Coral Gables, for the defendant.

JOHN J. KING, County Court Judge.

On May 20, 1979, at approximately 7 P. M., defendant was driving his motorcycle southbound on 100 East Beach Boulevard.

Defendant was stopped by Dania Police Officer Michael Thomas Schules, given roadside sobriety tests, and arrested for DUI, and no valid driver's license.

Defendant was transported to the Dania police headquarters and was subsequently given a breathalyzer test by Corporal Fidler; thereafter defendant was charged with unlawful blood alcohol content.

Defendant subsequently filed a motion to produce record of disposition of test ampule in this cause and the state has responded with a copy of the breathalyzer operational check lists, the last sentence of which indicates the test ampule has been destroyed.

Before the present motion is considered, the court must first rule on the constitutionality of Florida Statute 322.261.

On Apbil 3, 1978, this court ruled the statute unconstitutional for the following reasons —

"That Florida Statute, section 322.261, and the Florida Administrative Rules of Procedure 15B-3 and 10D-42, are unconstitutional in that same are predicated upon and involve an unlawful and improper delegation of authority by the Florida legislature, both to the Department of Health and Rehabilitative Services and to the Department of Highway Safety and Motor Vehicles." *State v. Ellis,* 78-006617 TTA-10.

The rules of the Department of Highway Safety and Motor Vehicles were later changed and Rule 15B-3.04 of the rules of the Department of Highway Safety and Motor Vehicles, and Rule 10D-42.24 of the Department of Health and Rehabilitative Services, were again challenged in county court.

Judge Robert Lance Andrews of the county court, 17th judicial district, ruled that these changes were also unconstitutional in an opinion in April, 1979, *State v. Bonagura,* 78-31687TT20.

"In this particular case, the court finds that the abrogation and surrender of the agencies' duties and responsibilities under Section 322.261(2)(a), when connected with adoption of Rule 15B-3.04 of the Rules of the Department of Highway Safety and Motor Vehicles, and Rule 10D-42.24 of the Department of Health and Rehabilitative Services, amounts to no more than in improper delegation of power by those agencies to an unknown manufacturer or group of unknown manufacturers, to create law on behalf of the state; and is therefore unconstitutional."

The thrust of Judge Andrews' opinion was that there are 13 different breath analysis devices, and rules and regulations had been adopted purporting to cover all thirteen, when, in fact, none were covered.

Since that time, the Department of Health and Rehabilitative Services and Department of Highway Safety and Motor Vehicles have again promulgated new rules, 100-42.24, which exactly adopt the operating procedures of its manufacturers of seven machines, including the Smith and Wesson Models 900 and 900A, which were used in the instant case.

It now appears that the Department of Health and Rehabilitative Services and Department of Highway Safety and Motor Vehicles have, since April 3, 1978, finally conformed to the law, and the previous objections found in *State v. Ellis*, supra, are no longer valid. We now hold that sections 15-B3.04 and 10D-42.24 are constitutional, and so now is Florida Statute 322.261.

## I I

The defendant now raises the question that the vials used in the various machines must be saved, and furnished to the defendant for further testing if demanded.

*Brady v. Maryland*, 373 U. S. 83, has long put the burden on the state to furnish the defendant with any evidence favorable to the accused, and this has been broadened to imply a duty for the state to preserve evidence prior to a request for discovery, in some jurisdictions.

In California, *People v. Hitch*, 527 P. 2d 361, held that the used vial can be retested and the results used to impeach the original operator and that the used vial may be physically examined by the defendant for general purposes of impeachment. This line of reasoning is put forth most strongly in *Lauderdale v. State*, 548 P. 2d 376 (Alaska).

In the *Lauderdale* case, the trial court found that there was plausible evidence that could be derived from later testing of the test ampule, which in turn bears upon the guilt or innocence of the defendant.

The expert testimony before this court was that the ampules contained potassium dichromate, sulphuric acid and silver nitrate.

After using the ampule for the test, it has a jagged broken end, which is not recoverable. The storage of the broken glass ampules, which contain mostly sulphuric acid, becomes a matter of safety due to gas and spillage.

Without storage in a cool, dark place, the chemical reactions which began with the test will continue in an unpredictable manner, and it is impossible to retest the ampule.

In the instant case, the defendant has not shown that the evidence produced by the ampule was favorable to him; he has not shown that the evidence was in the hands of the prosecution. He has not shown a request for discovery prior to the destruction of the evidence, and he has not shown that the ampule would be materially more favorable to the accused. There is no suggestion of impropriety on the part of the state, unless we are to imagine one.

The defendant would have us broaden the rule of *Brady v. Maryland*, supra, to include areas of mere probable or potential suppression of evidence, which may not be favorable or material to the defendant, or, for that matter, to the state, which has been done in the *Hitch* and *Lauderdale* cases, supra.

This court finds that *United States v. Agurs*, 427 U. S. 97, is more persuasive in narrowing the scope of *Brady v. Maryland*, supra —

> "It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."

The breath analysis machine report is not the only evidence that will be introduced on a charge of driving under the influence. Other testimony and witnesses will be introduced by the state. The state may not even introduce the results of the test.

The absence of the ampule, which would be untestable, does not create a reasonable doubt in and of itself. The ampule is not actually material to the issue of the guilt or innocence of the defendant.

As dicta, we submit that if a means can be found to retest the ampules, or perhaps a safer way to store them, it is a matter for the Department of Highway Safety and Motor Vehicles to explore. In Rule 10D-42.29, there are provisions for the storage of blood specimens. If it is desirable and feasible to store breath analysis amples, the rules would best be written by the Department of Highway Safety and Motor Vehicles rather than by judges encroaching on the legislative and executive branches of government.

The motion to compel production is denied.